IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

RODNEY EUGENE NAGYE,

    **Petitioner,**

v.                                      Civil Action No. 5:04-0710

EVELYN SEIFERT, Warden,
Mount Olive Correctional Complex,

    **Respondent.**

<u>MEMORANDUM OPINION</u>

Pursuant to the court's order of September 29, 2005, in which the court overruled both petitioner's objections to Magistrate Judge R. Clarke VanDervort's Proposed Findings and Recommendation [hereinafter "Findings and Recommendation" or "F & R"], confirmed and accepted the F & R, and indicated that an explanatory memorandum opinion would follow forthwith, the court now issues its memorandum opinion.

**A.   Factual and Procedural Background**

On March 29, 1997, Marylin Johnson died as a result of her boyfriend, Rodney Eugene Nagye, shooting her at close range with a pistol.[1]  Nagye is petitioner in this case.  Petitioner never

_____

[1]  In his proposed findings, the magistrate judge outlines the factual and procedural background of this case in great detail.  (<u>See</u> Docket No. 23 at 2-25.)  In his objections, petitioner indicates that the magistrate judge's summary of the factual and procedural history of this case is for the most part correct.  (<u>See</u> Docket No. 28 at 2) ("Petitioner does not dispute most of the Procedural History . . . ").  In an effort to avoid repetition for its own sake, the court will only include an abbreviated summary of this case's underlying factual and

disputed that he killed Johnson; after a jury trial in which he testified, petitioner was found guilty of second-degree murder on May 4, 1998, and was sentenced to a forty-year term of imprisonment in the state penitentiary.  (See Docket No. 17, Exhs. 1, 2, & 3.)

The procedural history of this case is more complex and marked by petitioner and appointed counsel both filing habeas petitions containing similar claims at different times. Petitioner does not object to most of the findings of the magistrate judge regarding his summary of the procedural history. (See Docket No. 28 at 2-3.)  Petitioner's objections having to do with the procedural history stem from his contention that his relationship with his second court-appointed post-trial attorney, Gerald R. Linkous, was effectively terminated as of October 21, 2002, when they had their last meeting.  (Id. at 3.)  Indeed, petitioner argues that he had no knowledge of how to contact Linkous after this point.  (Id.)

Petitioner contends that Linkous's actions after October 21, 2002, including his filing of an amended habeas petition on November 27, 2002, in the Circuit Court of Raleigh County, West Virginia, a September 13, 2003, Notice to Intent to Appeal in the Circuit Court of Raleigh County, West Virginia, a January 23,

---

procedural history, and will detail petitioner's objections to the magistrate's factual and procedural history in conjunction with its analysis below.

2004, Motion to Reconsider Petitioner's Application for Habeas Corpus with the Circuit Court, and an April 24, 2004, petition to the Supreme Court of Appeals for West Virginia, were not authorized by petitioner. (<u>Id.</u> at 4.)  Petitioner contends that all of these actions constituted ethical violations by Linkous. (<u>Id.</u>)

### B.  Standard of Review

In order to demonstrate that he is entitled to federal habeas relief, petitioner must demonstrate that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); <u>Wainwright v. Goode</u>, 464 U.S. 78, 83 (1983) ("It is axiomatic that the federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.").

Section 2254(d) provides that when the issues raised in a § 2254 petition were raised and considered on the merit in state court habeas proceedings, federal habeas relief is unavailable unless the state court's decision:

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or

> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

A federal court examining a habeas petition may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the state court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Williams v. Taylor, 529 U.S. 362, 412-413 (2000).  In making this determination, all factual determinations by the state court are entitled to a presumption of correctness.  28 U.S.C. § 2254(e).

When a state court fails to address an issue, or fails to articulate a rationale behind its ruling, the federal courts "must independently review the record and the applicable law; however, the review is not a de novo review." Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000), cert denied sub nom., 534 U.S. 830 (2001).  Rather, the federal court must conduct a review applying a deferential standard in which it must only determine whether the state court's decision is legally and factually reasonable.  Id.

### C.  Analysis

Petitioner makes a variety of objections to different facets of the magistrate judge's findings and recommendation that his petition under 28 U.S.C. § 2254 be dismissed.  The court addresses each of petitioner's objections in turn.

**1.   Objection Regarding Petitioner's Relationship With
       Gerald R. Linkous**

Petitioner first objects to the magistrate judge's finding
that Gerald R. Linkous was his attorney for habeas purposes.
(Docket No. 28 at 5-7.)  Petitioner states that

> [he] is not attacking Linkous's work, only
> the lack of any form of communication between
> himself and your Petitioner.  And, because of
> that lack of communication, out of fear,
> Petitioner did file his habeas to the West
> Virginia Supreme Court, and his 2254 petition
> to this Court.

(Docket No. 28 at 7.)  Petitioner contends that the lack of
communication between himself and Linkous effectively severed
their attorney-client relationship.  (Id.)

Having reviewed the record of this case, the court finds
that all of the documents filed by Linkous count as being filed
by petitioner for the purposes of determining which issues
petitioner can raise in this petition, and which he cannot.
The record establishes that Linkous was reappointed by the West
Virginia Supreme Court and that petitioner never effectively
terminated the representation.  Even if one accepts his argument
that he did not know how to contact his attorney, petitioner
could have written to the court and indicated that Linkous's
representation of him was terminated.  Petitioner has no right to
terminate him retroactively at this late stage in the game.

Petitioner states in his objections that he does not challenge the work conducted by his counsel.  Petitioner's objection appears to be that the lack of communication between himself and his counsel caused him to file habeas petitions himself out of fear.  (Id. at 7.)  Petitioner has no right to representation by counsel through habeas review.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).  As such, insofar as plaintiff's objection regarding Linkous regards the magistrate judge's finding that Linkous remained petitioner's counsel is considered in and of itself, this objection is hereby OVERRULED.

### 2.  Objections Regarding Grounds One, Two, Three, Six, and Fourteen

Petitioner's second series of objections is to the magistrate judge's findings that several of his claims must be dismissed because they allege errors in state post-conviction proceedings and, as such, are not cognizable under § 2254.  (See Docket No. 28 at 14-15, 17-25.)  Petitioner contends that this court must review these claims independent of the state courts' determinations because failure to do so would lead to a miscarriage of justice.  (See, e.g., id. 14-15, 17, 20.)

Petitioner's arguments are incorrect.  As the magistrate noted, errors occurring in state post-conviction proceedings typically cannot serve as a basis for federal relief under § 2254.  See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir.

-6-

1998) ("[A] challenge to Virginia's state habeas proceedings cannot provide a basis for federal habeas relief.").  The miscarriage of justice exception petitioner refers to is available only to a person who is actually innocent of the underlying crime, i.e. a habeas petitioner showing that "'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his habeas petition."  See Calderon v. Thompson, 523 U.S. 538, 559 (1998).  Allowing petitioner to attack matters collateral to the question of his guilt or innocence is not permitted under § 2254.  See Williams v. Missouri, 640 F.2d 140, 144 (8th Cir.), cert. denied, 451 U.S. 990 (1981).

That petitioner is only allowed to raise errors that occurred during the course of his original trial proceeding is a matter of settled law.  As such, all of petitioner's objections to the magistrate judge's finding that several of his claims regarding post-conviction proceedings are hereby OVERRULED.

**3.   Objections Regarding Dismissal of Grounds Four, Five, Eight, Nine, Ten, and Eleven**

Petitioner's next objection is to the magistrate judge's finding that, because procedurally-defaulted claims are not cognizable on federal habeas review absent showing of cause and prejudice or actual innocence, plaintiff's grounds four, five, eight, nine, ten, and eleven must be dismissed.  (See Docket No. 28 at 25-34.)  Petitioner argues that the Supreme Court of

Appeals for West Virginia was "given the opportunity" to rule on all of the claims present in this case. (Id. at 31.)  Because petitioner never exhausted relevant state remedies prior to filing a petition claiming them in federal court, the court must dismiss them.

In his findings and recommendation, the magistrate judge, having reviewed the record, found that several of petitioner's claims for relief were defaulted because they were only presented to the Raleigh County Circuit Court and not to the Supreme Court of Appeals for West Virginia. (Docket No. 23 at 29.)  In West Virginia, it is well-established that "unless with prejudice, summary dismissals of habeas petitioner invoking the original jurisdiction of the West Virginia Supreme Court will not satisfy the exhaustion requirements." See e.g., Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); McDaniel v. Holland, 631 F. Supp. 1544, 1546 (S.D. W. Va. 1986).  The reasoning of these cases precludes petitioner from bringing claims raised solely in his October 23, 2003 "Post-Conviction Petition for Writ of Habeas Corpus," which petitioner filed directly with the Supreme Court of Appeals for West Virginia. (See Docket No. 1 at 8-124.)

Instead, petitioner is only permitted to raise grounds previously included in the petition filed by his attorney in the more usual procedure.  In Losh v. McKenzie, 166 W. Va. 762, 768, 277 S.E.2d 606, 610-611 (1981), it was established under West

Virginia law that once a circuit court grants a pro se habeas corpus petition and appoints counsel for the petitioner, both counsel and the petitioner must raise all issues which are known to them or which, with reasonable diligence, would become known to them.

The record establishes that after petitioner filed a habeas petition in the Circuit Court of Raleigh County, West Virginia, and counsel was appointed to represent him, appointed counsel filed an amended petition, including the Losh list.  Petitioner's Losh list was filed by his counsel on November 27, 2002.  Any claim petitioner did not include on this list, he waived under West Virginia law.  No case could illustrate the rationale behind Losh better than this one in which petitioner's grievances appear to expand exponentially over time.

Accordingly, the court overrules petitioner's objections that some claims which had not been included on his Losh list were not waived. For the reasons discussed above, the court rejects petitioner's argument that he should be excused from West Virginia's procedural requirements as expressed in Losh. Further, as petitioner has neither shown cause and prejudice for his failure to include these items on that list, nor any evidence illustrating his actual innocence, the court adopts the magistrate judge's finding that petitioner's grounds four, five, eight, nine, ten, and eleven must be dismissed as they are

procedurally defaulted.  All objections by petitioner to the contrary are accordingly OVERRULED.

Petitioner also objects that his third ground was reviewed by the Circuit Court for Raleigh County, and as such, should be addressed by this court.  In the Circuit Court of Raleigh County's opinion (see Docket No. 17, Exh. 6), the court reviews petitioner's argument that he was incompetent at the time of the shooting due to the effects of alcohol and sleep deprivation.  In its discussion of petitioner's argument, the court noted that the first time petitioner brought his competency into question was during his state habeas action.  It noted that petitioner had never shown any signs of incompetence, as would have been required for the trial court to be required to have his competency evaluated.  Even so, the court considered his arguments in detail before rejecting them.

Having reviewed the state court's findings, the court notes that they are both reasonable and proper under the United States Constitution.  The court is aware of no cases that hold that a person who drank a moderate amount of alcohol on the night of a crime yet showed no manifestations of drunkenness can, at this late stage of the game, bring his competency into question.  Petitioner's argument is limited to his competency on the night of the incident: he argues that the combined effects of the alcohol he consumed and sleep deprivation played a part in

-10-

depriving him of the ability to commit an intentional crime.
First, the court finds that the state court when conducting
habeas review handled this issue reasonably.  Second, the court
finds that the decision of the Raleigh County Circuit court
properly applied state principles which adequately tracked the
protections provided in the United States Constitution.  No case
establishes that petitioner's constitutional rights were
infringed in this situation.  Finally, the court finds that the
instructions to the jury for lesser-included offenses having
less-stringent standards for petitioner's <u>mens</u> <u>rea</u> effectively
handle the issues of competency he raises for the first time
here.  As such, any objections petitioner raised to the
magistrate judge's handling of petitioner's third ground are
hereby OVERRULED.

### 4.    Objections Regarding Evidentiary Rulings

In ground twelve, petitioner contends that the trial court
admitted certain state evidence without holding a hearing on its
admissibility and conducting certain allegedly-required balancing
analyses.  (Docket No. 2 at 92-109.)  Petitioner contends that
the trial court's failure to apply state and federal evidentiary
rules was a violation of his constitutional rights as described
in <u>Huddleston v. United States</u>, 485 U.S. 618 (1988).

As the magistrate judge noted, to the extent that
petitioner's claim relies on state law, respondent is entitled to

-11-

summary judgment regarding this claim.  Relief under 28 U.S.C. § 2254 is available only to state prisoners in "custody in violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2254.  Violations of state law and procedure that do not implicate specific federal constitutional provisions are not cognizable in habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions.")

Generally, federal habeas relief is available with respect to a trial court's evidentiary rulings only to the extent which those rulings deprived someone of their right to a fair trial. See Abrams v. Barnett, 121 F.3d 1036, 1042 (7th Cir. 1997).  In his objections, petitioner notes that some evidence was admitted "because defense counsel wanted to show the jury the evidence." (See Docket No. 28 at 38.)  Showing juries evidence not directly relevant to the background of the case is often necessary and not even in the realm of being a constitutional violation.  Absent some showing that particular inadmissible evidence exerted a "substantial influence" over the jury, there is no constitutional violation.  See Kotteakos v. United States, 328 U.S. 750, 760-65 (1946).  The magistrate judge's rulings as to the relevance of evidence such as photographs, how the crime scene appeared, and

to bullet fragments are all correct under the standard as
discussed in Abrams.

Although petitioner objects to the admission of evidence
under Rule 404 of the West Virginia evidence, it is not clear to
what evidence he is referring.[2]  Although evidence was admitted
that petitioner has previously fired a gun into a trash can in
his apartment to show his son what it could do to it, from the
court's review of the record, it does not appear that any
evidence was admitted improperly under Rule 404.  The evidence
needed to convict petitioner of this crime came largely from the
testimony of his son about the events that had transpired over
the course of the night of the murder and petitioner's own
admissions to officers.  Given that petitioner's claims and
objections are general and conclusory, and also given the fact
that in no way has petitioner shown that any improper evidence
had a "substantial influence" on the jury, petitioner's
objections regarding the trial court's evidentiary rulings are
hereby OVERRULED.

_____

[2]  Assuming that petitioner was referring to the trash can
having a bullet hole in it, (see Docket No. 28 at 42), its
admission was relevant to the determination of how many shots
were fired during the course of the night.  It is not clear how
petitioner's shooting a trash can to show his son the power of a
weapon could be prejudicial in a trial where petitioner allegedly
shot someone for no apparent reason.  As such, insofar as
petitioner argues that this evidence was improper, petitioner's
argument fails because he has not made an adequate showing of
prejudice.

**5.   Objection Regarding the Sufficiency of the Evidence**

Petitioner's next objection is that the evidence introduced at trial was not sufficient to support the finding of guilt to the charge of second-degree murder.  (<u>See</u> Docket No. 28 at 40.) In support of this claim, petitioner alleges that the state's case consisted solely of circumstantial evidence and did not establish the elements of malice and intent.  (<u>See</u> Docket No. 2 at 109-128.)  Particularly, petitioner indicates that the state produced no evidence regarding the relationship between himself and the victim showing "a history of a stormy relationship, no ill-will, no source of antagonism, no argument . . . just before or at the time of the shooting, nothing which can justify the inference . . . to support the charge of second-degree murder." (<u>Id.</u> at 26.)  Without such evidence, petitioner avers that the state could not meet the "reasonable doubt standard" discussed in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

In his findings and recommendation, the magistrate judge noted that in reviewing the sufficiency of the evidence to support a state criminal conviction on a due process challenge in a habeas proceeding, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements beyond a reasonable doubt."  <u>Jackson</u>, 443 U.S. at 319.  A petitioner is entitled to relief only where no

-14-

rational trier of fact could have found such proof of guilt.  Id. at 324.  As the magistrate judge noted, under West Virginia law, a conviction for murder may be under either direct or circumstantial evidence.  See State v. Guthrie, 194 W. Va. 657, 668, 461 S.E.2d 163, 174 (1995) (discussing Jackson, the Supreme Court of West Virginia states that "when reviewing a conviction, we may accept any adequate evidence, including circumstantial evidence, as support for the conviction.")

As the magistrate noted, there was no question at trial whether petitioner shot the victim.  Further, under West Virginia law, malice can be discovered from conduct, and need not exist for any particular length of time prior to the homicide, but may "spring into the mind of the accused at the very instant of the commission of the act."  (See Docket No. 23 at 39) (listing and discussing cases describing malice under West Virginia law).

Drawing all inferences in favor of the prosecution, it is entirely possible that a rational jury could have found that petitioner acted maliciously and intentionally.  Viewing all the circumstances surrounding the shooting, a jury could have concluded that petitioner, being experienced with guns, shot the victim for no apparent reason while playing cards with her and his son.  The jury could have inferred from the evidence that he was not intoxicated when this happened; the jury was not required to believe petitioner's self-serving testimony that the shooting

-15-

was accidental or unintentional.  Given this evidence,
petitioner's objection regarding the sufficiency of the evidence
is hereby OVERRULED.

### 6.  Objections Regarding Ineffective Assistance During Petitioner's Criminal Trial

Petitioner's next objection regards the magistrate judge's
finding that his claim of ineffective assistance during the
instructional phase of trial should be dismissed.  (See Docket
No. 28 at 43.)  Specifically, petitioner contends that his
counsel's refusal to accept an instruction on accidental shooting
constituted ineffective assistance under Strickland v.
Washington, 466 U.S. 668, 687 (1984).  Under the two-prong test
provided in Strickland, a defendant must show first that their
counsel's performance was so deficient that it fell below an
objective standard of reasonableness, and second, that counsel's
deficiency resulted in prejudice so as to render the results of
the trial unreliable.  Id. at 687-91.  Regarding the first prong,
counsel's performance is entitled to a presumption of
reasonableness and judicial review of counsel's strategic
decisions is highly deferential.  Id. at 689.  The Fourth Circuit
Court of Appeals has recognized that ineffective assistance of
counsel may not be established by a "Monday-morning
quarterbacking" review of counsel's choice of trial strategies.
See Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert.
denied, 506 U.S. 1087 (1993).

-16-

Here, petitioner argues that his counsel's failure to offer a jury instruction as to the theory of accident barred the jury from considering this theory during their deliberations.  In evaluating this claim, the magistrate judge concluded that petitioner has not established that without determining whether petitioner's trial counsel was deficient for failing to pursue an instruction on the theory of an accidental shooting, petitioner has not established that he was prejudiced by the lack of such instruction.  (<u>See</u> Docket No. 23 at 43.)

The magistrate judge's conclusions were based on the fact that the trial court instructed the jury that it could return a verdict of second-degree murder, voluntary manslaughter, involuntary manslaughter, or not guilty.  (<u>Id.</u>)  Trial counsel appears to have chosen not to pursue an instruction as to whether the shooting was an accident because this instruction would be largely subsumed in the charge for involuntary manslaughter. (<u>Id.</u> at 44) Petitioner does not argue that pursuing the a jury instruction of accidental shooting would have changed the outcome of the trial.  Instead, he contends that his counsel "could have been more aggressive" in his trial strategy.  (<u>See</u> Docket No. 2 at 39-40.)  <u>Stamper</u> establishes that this sort of "Monday-morning quarterbacking" does not serve to establish a constitutional violation.  <u>See</u> 944 F.2d at 178.  As such, petitioner's objection

regarding his counsel's failure to request an accidental shooting jury instruction is hereby OVERRULED.

Similarly, the court finds that petitioner's trial counsel was not ineffective for failing to object to the court's instruction regarding second-degree murder or through not objecting to the court's instruction that the jury consider the offenses in a particular order.  (See Docket NO. 28 at 45.)  As the magistrate judge found, a trial court is permitted to instruct the jury to consider lesser-included offenses in a particular order.  See United States v. Jackson, 726 F.2d 1466, 1469 (9th Cir. 1984).  Because the court has already established that, in viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find petitioner guilty of second-degree murder, because petitioner cannot make the required showing of prejudice under Strickland, the court finds that petitioner's claim under Strickland regarding the second-degree murder instruction fails.  As such, all of petitioner's objections regarding the dismissal of ineffective assistance claims are hereby OVERRULED.

**7.   Objections Regarding Whether the Jury Instructions Violated Constitutional Rights**

Petitioner's next objection is that the magistrate judge erred when he found that certain jury instructions did not violate petitioner's constitutional rights.  (Docket No. 23 at 48-55.)  Specifically, petitioner contends that the circuit

-18-

court's instruction was misleading, incomplete, misapplied the law, and included presumptions that violated petitioner's constitutional rights.  (<u>See</u> Docket No. 28 at 45.)

As noted by the magistrate judge, jury instructions are matters of state law and procedure which do not invoke federal constitutional guarantees.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. at 71-72 ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 349-50 (1993) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of state evidentiary rules.").  The proper inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  <u>See</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973).  When a trial court's instruction is ambiguous, the court must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally-relevant evidence." <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990).  The court examines petitioner's objections in turn.

### a.   Objection Regarding the General Charge

Petitioner's objections regarding jury instructions begin broadly, and then move to several specific, more focused points of dispute.  (<u>See</u> Docket No. 28 at 48-51.)  At the time the jury

instructions were given, the court instructed the jury that the
state had to prove petitioner's guilt beyond a reasonable doubt
and that the law presumes all defendants innocent of crimes.
(<u>See</u> Docket No. 17, Exh. 9 at 852-857.)   In situations where the
evidence was equivocal, the jury was instructed that it must
acquit petitioner.  (<u>Id.</u> at 858.)   Further, the court instructed
the jurors that the state had to prove every element of the
charge beyond a reasonable doubt for them to return a guilty
verdict.  (<u>Id.</u> at 859-65.)   Regarding the introductory
instructions, there appears to be no constitutional error.   As
such, insofar as petitioner has objected to these instructions,
such objection is hereby OVERRULED.

### b.    Objection Regarding Inference of Malice

Petitioner's next claim is that one instruction permits the
jury to infer the elements of malice and intent from the use of a
firearm.  (<u>See</u> Docket No. 2 at 135-46; Docket No. 28 at 49-52.)
The jury instruction read:

> The court further instructs the jury that
> malice and intent to kill may be inferred by
> the jury from the defendant's use of a deadly
> weapon under circumstances which you do not
> believe afforded the defendant excuse,
> justification, or provocation for his
> conduct.

(<u>See</u> Docket No. 17, Exh. 9 at 863.)   Petitioner contends that the
state failed to substantiate the elements of malice and intent
and therefore, the court improperly instructed the jury.  (<u>See</u>

Docket No. 2 at 136-37.)  Petitioner contends that the effect of such an instruction was to shift the burden of proof from the state to him to prove beyond a reasonable doubt the elements of malice and intent.  (Id. at 135.)

It is clear that this instruction is proper under West Virginia law.  (See Docket No. 23 at 51) (listing cases).  The magistrate judge noted that at trial, evidence established that petitioner picked up a loaded gun knowing it to be loaded, pointed it directly at the victim's head, and pulled the trigger. In petitioner's own testimony before the jury, he could not provide a reason why he shot her.

Although petitioner indicates that the jury should have been permitted "to consider and give effect to all relevant mitigating evidence," an instruction relevant to situations where the jury is considering the death penalty, petitioner has not discussed what any such evidence might be in this case.  When petitioner testified, he could not provide a reason as to why he shot the victim.  His arguments that the state was required to show that he and the victim had been arguing are unavailing.  Nothing in this instruction violates the United States Constitution.  As such, petitioner's objection regarding this instruction is OVERRULED.

### c.   Absence of Accidental Shooting Instruction

Similarly, petitioner claims the trial court committed reversible error when it failed to instruct the jury on the defense of accidental shooting.  (Docket No. 2 at 147-49.)  As where this instruction was discussed above regarding petitioner's ineffective assistance argument under Strickland, this argument is not persuasive as jurors could have found that petitioner was either not guilty of all crimes or guilty of lesser charges including voluntary or involuntary manslaughter.

In reviewing this issue, the state habeas court found that defendant had shown no evidence that the gun accidentally went off or that there was a mechanical failure that caused the gun to go off.  (Docket No. 17, Exh. 6 at 49-50.)  As such, the state habeas court found that there was no evidence supporting the issuance of this instruction.  (Id.)  Under West Virginia law, trial courts have no duty to instruct juries regarding inapplicable defenses.  See State v. Brooks, 214 W. Va. 562, 564, 591 S.E.2d 120, 122 (2003) (holding that an instruction lacking evidentiary support should not be given).

In light of the court's review of the record, the court finds that this decision was reasonable and did not violate petitioner's constitutional rights.  As such, petitioner's objection regarding the absence of an accidental shooting instruction is hereby OVERRULED.

### d.   Objection as to Separate Counts in the Indictment

Petitioner's final objection is to the court's failure to instruct the jury that Count 2 of the Indictment was not a felony offense.  (See Docket No. 28 at 53.)   The instruction read:

> The court instructs the jury that Count 2 of the Indictment charges that the defendant committed the acts charged in Count 1 by the use of [a] firearm.
> Therefore, if you should find the defendant guilty under Count 1, you should then answer whether you find he committed the acts charged by the use of a firearm.

(See Docket No. 2 at 150-59; Docket No. 17, Exh. 9, at 864.)

In reviewing petitioner's claim, the magistrate judge found that these instructions did not "create a conclusive presumption by the jury that, Petitioner was charged with two felony charges, and, because of one charge, it [led] to the other felony charge." (See Docket No. 23 at 54; Docket No. 2 at 151.)   Further, petitioner claims the instruction is ambiguous, not a complete and accurate picture of the applicable law, and creates a presumption that the jury must find guilt no matter what the evidence is.  (See Docket No. 2 at 151.)

Having reviewed the record and applicable case law, the court finds plaintiff's final argument absolutely without merit. As the magistrate noted, the elements of the charge were sufficiently clear that petitioner was aware he was being charged with a second offense, i.e. possession of a firearm.  The

instruction neither creates a presumption, is ambiguous, or paints a false picture of applicable law.  If defendant used a firearm <u>and</u> committed the offense discussed in Count 1, he is guilty of a second offense.  The court need not instruct as to whether the charge is a felony or not.  Further, it does not appear that petitioner has exhausted this claim in state courts. As such, for the reasons discussed, plaintiff's final objection is hereby OVERRULED.  The findings and recommendation of the magistrate judge are confirmed in their entirety.

### D.  Conclusion

For the reasons discussed above, the magistrate judge's decision was well-reasoned and supported by case law. Petitioner's objections are accordingly OVERRULED.

The Clerk is directed to forward a copy of this Memorandum Opinion to the petitioner, pro se, and to all counsel of record.

IT IS SO ORDERED this 29th day of September, 2005.

ENTER:

David A. Faber
Chief Judge

-24-